JOHN C. GASKILL, Respondent, v. DODSON LEAD AND ZINC COMPANY, Appellant.

**St. Louis Court of Appeals, May 8, 1900.**

1. **Evidence: LEGAL INFERENCE: PRACTICE, TRIAL.** Where the case for plaintiff rests purely on inferential evidence, it is the duty of the trial court to exclude all which does not form the basis of a legal inference.

2. ———: ———: ———. In the case at bar there was no positive evidence that the defendant knew of the account created on its behalf, until the reception of a letter from the deceased member of the plaintiff banking firm calling its attention to the claim of overdrafts.

Appeal from the Wright Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*Wm. O. Mead* and *T. T. Loy* for appellant.

(1) The fact that Roote was superintendent and had charge of defendant's mines was no evidence that he had power and authority to open an account in defendant's name with the Spence bank, nor to overdraw such account after it was opened—no evidence that he was defendant's agent to borrow money either express or implied. Brosnahan v. Brewing Co., 26 Mo. App. 386; Watson v. Race, 46 Mo. App. 546; Werth v. Ollis, 70 Mo. App. 318; 4 Thompson on Cor., secs. 4880, 4886, 4890. There is no evidence of any claim by Roote of any authority to open any account with the Spence bank or borrow money, nor is there any evidence that the Spence bank loaned him any money upon the faith of any such representations made by him, or by reason of

any apparent authority he had to open an account, overdraw the same, or borrow money. (2) There is no evidence of any previous course of dealing between Roote and the bank with the knowledge of defendant, nor such dealing with defendant as to justify the conclusion of the bank that Roote had power or authority to open an account with the bank, overdraw the same or to borrow money, nor is any such claim made by plaintiff on the trial in the circuit court. (3) The fact that Roote was superintendent in charge of defendant's mines in Wright county, did not clothe him with apparent authority to borrow money. (4) It was the duty of the Spence bank, before permitting Roote to open and overdraw an account in defendant's name, to advise itself of his power and authority to do so, and if it dealt with him without so advising itself, it did so at its peril. Johnson v. Hurley, 115 Mo. 513.

*R. L. Goode* and *F. M. Mansfield* for respondent.

(1) It clearly appears from the record that Roote, as superintendent, had not only an apparent but an actual authority to make the overdraft. The extent of an agent's authority, like the agency itself, may be shown either by the express words or acts of the principal or it may be implied or inferred from circumstances. Sparks v. Dispatch & Co., 104 Mo. 531; Johnson v. Hurley, 115 Mo. 513; Mitchum v. Dunlap, 98 Mo. 418; Edwards v. Thomas, 66 Mo. 568; Brooks v. Jameson, 55 Mo. 505; Gibson v. Tiebig, 24 Mo. App. 65; Sharp v. Knox, 48 Mo. App. 169. (2) The evidence that the controverted acts were within the direct authority of Roote as superintendent is so conclusive that we need not invoke the doctrine that they were binding on the defendant if within the apparent scope of his authority, though this is likewise true. His powers as manifested by

his acts (known to and tolerated by his company, whether authorized or not), were universal. He was all there was of the company in Missouri, and all the company's business was in Missouri. Summerville v. Railway, 62 Mo. 393; Topeka Primary A. U. B. v. Martin, 39 Kan. 570; Whitaker v. Kilroy, 70 Mich. 635; Siememens Gas Lamp Co. v. Hortsman, 14 W. N. 396. (3) If a principal, whether a corporation or individual, enjoys the benefits of an act done by an agent, his authority to do the act may not be questioned. Ruggles v. Washington Co., 3 Mo. 496; Homes v. Kansas City Board of Trade, 81 Mo. 137; Brown v. Wright, 25 Mo. App. 54; Tuscallose & Co. v. Perry, 85 Ala. 158; Parsons v. Guarantee Ins. Co., 64 Mo. App. 32. (4) If an officer of a company who usually transacts its financial affairs borrows money in its name he binds the company unless the latter proves it was for an illegal purpose. Beers v. Phoenix Glass Co.; 14 Barb. (N. Y.) 358; Elioree v. Dodge, 35 Barb. 336. "In a suit for money loaned a corporation and used by it, it can not plead that it exceeded its statutory authority to" contract debts or that the officers negotiating the loan were not properly authorized. Connecticut River Bank v. Fiske, 60 N. H. 363. That portion of Rippee's testimony of which appellant complains was merely a part of the evidence tending to prove that Roote did everything that was done in connection with defendant's business in this state. It was competent to show the amplitude and completeness of his authority. (5) The judgment is manifestly for the right party and should be affirmed, even though there were errors in the instructions or the admission of evidence, which, however, we deny. Jones v. Poundstone, 102 Mo. 240; George v. Railroad, 57 Mo. App. 358; Fortune v. Fife, 105 Mo. 433; Norton v. Paxton, 110 Mo. 456; Denebler v. Ins. Co., 51 Mo. App. 154; Williams v. Mitchell, 112 Mo. 300.

BOND, J.—This is an action on an account for $1,072.45, alleged to be due for overdrafts paid by two copartners engaged in private banking, the plaintiff being the surviving partner and the administrator of the partnership effects of his deceased partner. There was a verdict and judgment for plaintiff, from which defendant appealed to this court.

The uncontroverted evidence shows that defendant was a foreign corporation owning mineral lands and conducting mining operations in the county of Wright during the years 1894, 1895 and 1896, and that it appointed one G. J. Roote as its superintendent in the conduct of its business, and authorized him to employ and discharge laborers and to purchase supplies on its behalf; that such superintendent was required to make monthly returns of the pay roll of the men employed by him and other expenses incurred, to the home office of the defendant, whereupon it forwarded to him a draft to cover the aggregate of the sums specified in his report. There is evidence tending to prove that said superintendent opened an account with the banking firm represented by plaintiff, in his own name as such, and subsequently caused this account to be put in the name of the defendant corporation, that it was his habit to draw upon said account for the wages of the men employed on behalf of defendant and also to pay for supplies purchased by him for the prosecution of its mining business; that such checks were signed, either by him as superintendent, or in the name of defendant by him as superintendent and that to the credit of said account he deposited the drafts forwarded in response to his monthly report and pay roll and expenses. The evidence tends further to show that there was an over-payment on his checks so drawn upon this account in the sum sued for. There is no evidence in the record of any actual authority

from defendant for the creation of this account in the plaintiff bank. There is some slight evidence that defendant might have inferred the existence of such an account from statements contained in the report of its superintendent showing an indebtedness against it for overdrafts. Against the objection of defendant the court permitted the plaintiff to introduce evidence tending to show that defendant's superintendent had also acted as its general agent in the purchase of mineral lands. Such evidence had no tendency whatever to establish any authority in the superintendent to open a deposit account in the plaintiff bank in the name of the defendant. It was clearly prejudicial. The only ground upon which defendant could be held liable in the present action is, that it gave its superintendent an apparent authority to draw money on its credit from the plaintiff bank. That it gave him no direct authority so to do, is clear under the facts in this record. As the evidence in question afforded no basis of a legitimate inference of ostensible authority to create an account for defendant, its necessary effect was to confuse and mislead the jury into a surmise of authority on the part of the agent to borrow money on defendant's account from the plaintiff because it had given him authority to negotiate a purchase of mineral lands. Such a deduction would have been wholly unwarranted and the trial court should have guarded against it by excluding the evidence adduced to sustain it. In the present case there was no positive evidence that the defendant had any knowledge of the account created on its behalf, until the reception of a letter from the deceased member of the plaintiff banking firm calling its attention to the claim of an account for overdrafts. In its reply to this letter the defendant denied all knowledge of such dealing on its account. The case for plaintiff rested purely on inferential evidence, and it was the duty of the trial court therefore to exclude all

which did not form the basis of a legal inference.  For these reasons the judgment recovered is reversed and the cause remanded.  Judge *Bland* concurs; Judge *Biggs* absent.